UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GARY HOGAN,

                      Plaintiff,

    v.

BMW OF NORTH AMERICA LLC,

                      Defendant.

CASE NO. C20-0089-RAJ-MAT

REPORT AND RECOMMENDATION

INTRODUCTION

Plaintiff Gary Hogan brings claims relating to his BMW vehicle with an allegedly defective "N63" engine. (Dkt. 17.) Defendant BMW of North America, LLC (BMW NA) seeks dismissal of this action as time-barred pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 24.) Defendant relies on its separately filed Request for Judicial Notice in Support of Motion to Dismiss (Dkt. 23) and accompanying exhibits. Plaintiff opposes the motion to dismiss. (Dkt. 26; *see also* Dkt. 27 (defendant's reply).)[1] The undersigned, having considered the briefing and evidence

---

[1] The parties' Stipulation for Extension of Motion to Dismiss Deadlines (Dkt. 25) is herein GRANTED.

REPORT AND RECOMMENDATION
PAGE - 1

properly considered in support, concludes defendant's request for judicial notice (Dkt. 23) should be GRANTED, and defendant's motion to dismiss (Dkt. 24) should be DENIED.

## BACKGROUND

Plaintiff purchased a 2009 BMW 750i with an N63 engine ("the vehicle") from BMW Seattle on or about September 20, 2012. (Dkt. 17, ¶¶2, 14.) He alleges that, within the first year of purchase, the vehicle consumed an excessive amount of engine oil, requiring him to add one quart of oil about every 1,000 to 1,600 miles throughout the warranty period, well before BMW's recommended oil change intervals. (*Id.*, ¶16.) Also within the first year of purchase and during the warranty period, plaintiff complained to BMW Seattle that the vehicle consumed an excessive amount of engine oil. (*Id.*, ¶17.) BMW Seattle told plaintiff the oil consumption was normal and did not warrant a repair. (*Id.*, ¶18.)

Plaintiff alleges that, as early as 2008, BMW knew the N63 engine had a manufacturing defect causing it to consume oil at an extremely rapid rate and requiring the regular addition of oil between BMW's recommended oil change intervals in order to prevent engine failure and other damage. (*Id.*, ¶¶37, 69.) He contends BMW acquired that knowledge through "pre-release testing data, durability testing, early consumer complaints. . . , testing conducted in response to those complaints, aggregate data from BMW dealers, including dealer repair orders and high warranty reimbursement rates, as well as, from other internal sources." (*Id.*, ¶69.)

Plaintiff avers that, rather than disclosing the defect to plaintiff and other consumers and providing for repair, BMW issued technical service bulletins ("TSBs") to address complaints of excessive oil consumption and other problems related to the N63 engine. (*Id.*, ¶¶51-53.) For example, a June 2013 TSB instructed service technicians to add two quarts of engine oil to N63 vehicles, instead of the one additional quart instructed by the vehicle's electronic system. (*Id.*,

¶¶54-55.) Plaintiff maintains the TSBs served to misrepresent that the rate of oil consumption in N63 engines was normal and expected in engines fitted with turbochargers. (*Id*., ¶57.) BMW also, on December 29, 2014, launched the "N63 Customer Care Package", consisting of measures which served to mask, not correct the N63 engine defects. (*Id*., ¶¶61-62.) The package, for example, significantly reduced the mileage of recommended engine oil change intervals for subject vehicles from the earlier of 15,000 miles or two years, to the earlier of 10,000 miles or one year. (*Id*., ¶63.) BMW also launched the "N63 Customer Loyalty Offer", providing discounts on new BMW vehicles, and the "N63 Customer Appreciation Program", authorizing dealerships to provide up to $50 of BMW merchandise or accessories. (*Id*., ¶¶64-65.)

Plaintiff contends BMW had a duty to disclose the oil consumption defect and associated repair costs because the defect poses unreasonable safety hazards, including the possibility of engine failure and resulting serious risk of accidents and injuries. (*Id*., ¶¶68, 70-71.) He contends BMW had exclusive knowledge or access to material facts about the defect that were not known or previously discoverable by plaintiff and other consumers. (*Id*.) He identifies consequences of the defect and failure to disclose, such as out-of-pocket expenses incurred and impaired use, value, and safety of the vehicle. (*Id*., ¶¶72-76.)

Plaintiff's pursuit of relief in relation to the alleged N63 defect began outside of this Court. Following a lawsuit initiated on September 18, 2015, the New Jersey District Court, on May 11, 2018, granted preliminary approval of a class action settlement relating to the N63 engine in *Bang v. BMW of North America, LLC*, No. 2:15-CV-6945 (Dkt. 88). A settlement notice advised that class members who chose to exclude themselves from the settlement "may sue, continue to sue, or be part of a different lawsuit against [BMW] in the future, including for claims that this Settlement resolves" and "will not be bound by anything that happens in this lawsuit." *Id*. (Dkt. 111-3). On

August 10, 2018, plaintiff opted out of the *Bang* class action settlement and, on December 3, 2018, filed an individual action in New Jersey District Court. *See Sarwar, et al. v. BMW of North America, LLC*, *et al*., No. 2:18-cv-16750. (*See also* Dkt. 17, ¶92.) On November 27, 2019, the *Sarwar* court severed plaintiff's claims with leave to re-file as a separate cause of action, and on that date and in a subsequent order deemed the statute of limitations tolled during the pendency of that action through January 27, 2020. *See Sarwar*, No. 2:18-cv-16750 (Dkts. 42 & 45). Plaintiff filed suit in this Court on January 20, 2020 and, on June 28, 2020, filed the operative First Amended Complaint (FAC). (Dkts. 1 & 17.)

## DISCUSSION

Plaintiff alleges breaches of warranty, implied warranty of merchantability, and express warranties pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., and the Washington Uniform Commercial Code, RCW 62A.2-313, 62A.2-314, violation of the Washington Consumer Protection Act, RCW 19.86.010, *et seq*., and fraudulent concealment. (Dkt. 17.) Defendant seeks dismissal of plaintiff's claims pursuant to Rule 12(b)(6) (Dkt. 24), as well as judicial notice of documents in support of its motion (Dkt. 23).

A.   Materials Considered

As a general matter, the Court may not consider material beyond the complaint in ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Exceptions to this rule include material properly submitted as a part of the complaint and documents not physically attached to the pleading if the contents are alleged in the complaint and no party questions the authenticity. *Id*. *See also United States v. Ritchie*, 342 F.3d 903, 907-09 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis

of the plaintiff's claim.")  In addition, under Federal Rule of Evidence 201, a court may take judicial notice of "'matters of public record.'"  *Lee*, 250 F.3d at 688-89 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).  Specifically, a court may take judicial notice of a fact "not subject to reasonable dispute" because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

In the Request for Judicial Notice (RJN), defendant asks the Court to consider three exhibits in support of the motion to dismiss:  (1)  excerpts of the New Vehicle Limited Warranty booklet, and its identification of the date on which coverage begins, its limitations on implied warranties, and portions of the booklet reference by plaintiff in the FAC; (2) excerpts of a Warranty Vehicle Inquiry, depicting the original "in-service date", meaning the date the vehicle was sold to its original owner; and (3) excerpts of the Certified Pre-Owned Consumer Information Statement, including the date on which coverage begins, its exclusions, and the portions inferred by plaintiff in the FAC.  (Dkt. 23.)  Plaintiff did not object or otherwise respond to the request to take notice of the New Vehicle Limited Warranty or the CPO Limited Warranty.  Because plaintiff refers to and/or relies on both warranties in the FAC (*see, e.g.,* Dkt. 17, ¶¶22-36), and because there does not appear to be any question as to the authenticity of the exhibits submitted by defendant, the Court appropriately takes judicial notice of those documents (*see* Dkt. 23, Exs. 1 & 3).

With respect to the Warranty Vehicle Inquiry record and its identification of the vehicle's in-service date, defendant states plaintiff referenced and discussed the date on which he purchased the vehicle and provided the vehicle's model year, while making only vague references to the in-service date.  Plaintiff objects to the introduction of this document, observing courts may consider documents not physically attached to a pleading "where the documents' authenticity is not

REPORT AND RECOMMENDATION
PAGE - 5

contested, and the plaintiff's complaint necessarily relies on them." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citing *Lee*, 250 F.3d at 688-89).  Plaintiff states the FAC does not rely on the Warranty Vehicle Inquiry record.

While it is true plaintiff's complaint does not rely on the Warranty Vehicle Inquiry record or the vehicle's in-service date, plaintiff does not question the authenticity of the record and its content does not appear to be subject to reasonable dispute.  The Court, as such, finds an insufficient basis for plaintiff's objection to the Court's consideration of this document (*see* Dkt. 23, Ex. 2).  The Court also notes that, as reflected below, neither this document, nor the in-service date provides for the dismissal of plaintiff's claims under Rule 12(b)(6).

B.  Standard of Review

A pleading need only provide a "short and plain statement" of the claim showing plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a).  A Rule 12(b)(6) motion to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (cited source omitted). However, while detailed factual allegations are not necessary to survive a motion to dismiss, a complaint must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).  The Court must determine whether the complaint alleges factual allegations stating a claim for relief that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570 (2007)).

REPORT AND RECOMMENDATION
PAGE - 6

A heightened pleading standard applies to fraud claims. Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud[.]" *Id.* A defendant's knowledge or other state of mind "may be alleged generally[,]" *id.*, but allegations must include "'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The fraud allegation must be specific enough to provide notice to a defendant of the particular misconduct alleged "'so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

C.    Motion to Dismiss

Defendant argues each of plaintiff's claims for relief is time-barred. Defendant also argues plaintiff's fraudulent concealment claim fails to state a claim upon which relief can be granted. Plaintiff counters that the limitation periods for his claims were tolled and his claims timely filed, and the sufficient pleading of his fraudulent concealment claim.

1.    Statutes of Limitations and Tolling:

Defendant asserts the four-year statutes of limitations for plaintiff's claims under the Magnuson-Moss Warranty Act (MMWA) and the Uniform Commercial Code (UCC) expired on September 13, 2013, four years after the vehicle was originally tendered and placed into service. *See* RCW 62A.2-725(1), (2); 15 U.S.C. §§ 2304(a)(2) and 2308(b).[2] For plaintiff's Consumer

---

[2] The MMWA "incorporates the substantive provisions of state warranty laws." *Nguyen v. Nissan North America, Inc.*, 932 F.3d 811, 817 n.3 (9th Cir. 2019). Claims under the MMWA "stand or fall" with warranty claims under state law, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008), and the statute does not, as a general matter, provide an independent basis for liability, *see Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986) ("[E]xcept in the specific instances in which Magnuson-

REPORT AND RECOMMENDATION
PAGE - 7

Protection Act (CPA) claim, defendant asserts the four-year statute of limitations expired on or before December 2016, within four years of when plaintiff observed the vehicle's excessive consumption of oil and therefore reasonably suspected something was wrong. *See* RCW 19.86.120; *Hummel v. Northwest Trustee Services, Inc.*, 180 F. Supp. 3d 798, 807-08 (W.D. Wash. 2016) (citing *Aventa Learning Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1095 (W.D. Wash. 2011), and *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 769, 733 P.2d 530 (1987)).  (*See also* Dkt. 1, ¶16 (originally alleging observation "[w]ithin a few months" after the September 2012 purchase), and Dkt. 17, ¶17 (amending allegation to the observation occurring "[w]ithin first [sic] year" of purchase).)  Defendant further argues any claim of fraudulent concealment would have expired in December 2015, three years after plaintiff knew or should have known of the facts underlying his claim for relief.  *See* RCW 4.16.080(4); *O'Neil v. Estate of Murtha*, 89 Wn. App. 67, 69-70, 947 P.2d 1252 (1997).  Defendant, in sum, maintains all of plaintiff's claims in the January 2020-filed lawsuit are time-barred.

A statute of limitations is an affirmative defense that a plaintiff need not negate in its complaint.  *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).  "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'"  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).  A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts that would

---

Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."). Defendant states that the parties here agree Washington State's UCC statute of limitations applies to MMWA claims. (Dkt. 24 at 7-8.)  (*See also* Dkt. 17, ¶28 ("The warranty period is 48 months or 50,000 miles, whichever occurs first."))

REPORT AND RECOMMENDATION
PAGE - 8

establish the timeliness of the claim." *Id*. *See also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276-77 (9th Cir.1993) (dismissal on statute of limitations grounds disfavored where matters outside the complaint may not be considered and where equitable tolling may apply).

When applying a state statute of limitations, the Court uses applicable tolling provisions from that state's law. *See Wallace v. Kato*, 549 U.S. 384, 394 (2007). In Washington, equitable tolling may be applied "when justice requires," as upon a finding of "bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Millay v. Cam*, 135 Wn.2d 193, 205, 955 P.2d 791 (1998) (citations omitted). With an assertion of fraudulent concealment tolling, a plaintiff must show ignorance of a defect and some affirmative conduct of a defendant designed to prevent the plaintiff from becoming aware of the defect. *Giraud v. Quincy Farm & Chem.*, 102 Wn. App. 443, 452-55, 6 P.3d 104 (2000) (finding fraudulent concealment may apply to toll statutes of limitations for warranty claims under the Washington version of the UCC). As previously stated by this Court, while "[t]he equitable tolling doctrine focuses on whether there was excusable delay by the plaintiff[,]" equitable estoppel "focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Tellis v. Alaska Airlines, Inc.*, C17-0901-RAJ, 2018 WL 5295751 at *5 (W.D. Wash. Oct. 25, 2018) (quoting *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008)).

Plaintiff here denies his claims accrued either at the time of the original sale of the vehicle, when he bought the vehicle, when he first noticed the oil consumption issue, or when he notified the BMW dealer of his observation. He argues, and explicitly pleads, the timeliness of his claims due to BMW's fraudulent concealment of the defect and equitable tolling based on BMW's misrepresentations in the *Bang* class action settlement notice. (Dkt. 17, ¶¶77-95.)

a.    Fraudulent concealment tolling:

Plaintiff alleges defendant was aware of and had exclusive knowledge of the N63 engine defect in as early as 2008, years prior to his purchase of the vehicle, and that defendant knowingly and actively concealed the defect, preventing plaintiff and other purchasers from gaining knowledge that the defect existed. (*See id*., ¶¶14, 69-70.) He avers that, when he complained about excessive oil consumption and sought repair within the first year of purchasing the vehicle, his authorized dealer told him the consumption was normal and that his car did not require any repairs. (*Id*., ¶¶3, 17-18, 78-84, 87.) He thereafter continued to add oil in between BMW's recommended oil change intervals in order to prevent the engine from running out of oil and failing. (*Id*., ¶19.) Plaintiff, in other words, alleges defendant concealed the N63 engine issues from him and prevented his discovery of the injuries alleged.

The allegations set forth by plaintiff provide for the possibility of establishing the tolling of applicable statutes of limitations. These allegations, taken as true, may preclude dismissal under Rule 12(b)(6). *See, e.g.*, *S.L. Anderson & Sons, Inc. v. PACCAR, Inc.*, C18-0742-JCC, 2018 WL 5921096 at *3-4 (W.D. Wash. Nov. 13, 2018) (motion to dismiss as untimely denied where plaintiffs explicitly plead the doctrines of equitable tolling, equitable estoppel, and fraudulent concealment, and alleged defendants were aware of an engine defect, possessed exclusive knowledge or access to material facts about the defect not known or reasonably discoverable by plaintiffs, and knowingly and actively misrepresented the defect when plaintiffs brought engines in for warranty repairs); *Sloan v. GM, LLC*, 287 F. Supp. 3d 840, 889 (N.D. Cal. 2018) (denying motion to dismiss claims as untimely where plaintiffs sufficiently plead fraudulent concealment in alleging defendant knew about an alleged engine defect, informed plaintiffs the engine's "oil consumption was 'normal[]'", and continued to sell the engines without disclosure of the defect).

REPORT AND RECOMMENDATION
PAGE - 10

As argued by plaintiff, the case of *Yi v. BMW of North America, LLC*, No. 18-55827, 2020 WL 749629 (9th Cir. Feb. 14, 2020), does not alter the Court's conclusion. In *Yi*, the Ninth Circuit affirmed dismissal of a plaintiff's claims as time-barred and entered summary judgment upon finding the evidence Yi "suspected by April 2011 that BMW either would not or could not repair the oil consumption problem with his car's engine[]" sufficient to trigger the statute of limitations and that he did not act with diligence after he discovered his claims. *Id.* at *1. In *Yi*, the dismissal occurred following completion of discovery and just prior to trial, after the district court requested briefing on statutes of limitations and provided the parties the opportunity to be heard at a pre-trial conference and hearing. *See Yi v. BMW of North America., LLC*, C17-6467, 2018 WL 3359016 at *3-10 (C.D. Cal. May 24, 2018), *aff'd*, 2020 WL 749629. Evidence available to the court included plaintiff's testimony that, despite being consistently told in over five repair visits that his vehicle's oil consumption issues were normal, he still "'thought that something was not right.'" *Yi*, 2020 WL 749629 at *1. The Court concluded, "even assuming that BMW's assurances that Yi's car was 'normal' constituted an affirmative fraudulent misrepresentation, Yi's purported reliance on those assurances is contradicted by his own testimony that he still believed 'something was not right.'" *Id.* at 2 (citations omitted).

In this case, unlike *Yi*, there is no testimony from plaintiff or other discovery to consider, and no allegation plaintiff suspected a defect despite being told his vehicle's oil consumption was normal. Instead, plaintiff alleges that, "having been assured by BMW Seattle that such engine oil consumption was normal, [he] kept adding engine oil to the Vehicle in between the Defendant's recommended oil change intervals[.]" (Dkt. 17, ¶¶17-19.) Notably, numerous courts have rejected defendant's attempts to dispose of N63 defect cases at the pleading stage on statute of limitations grounds. *See, e.g., Mize v. BMW of N. Am., LLC*, No. C19-007, 2020 WL 1526909 at *7 (N.D.

REPORT AND RECOMMENDATION
PAGE - 11

Tex. Mar. 31, 2020) ("Like other federal courts found in similar cases, the [pleading] properly delineates the specific facts alleged by Plaintiffs to suggest that the statute of limitations may have been tolled by BMW's concealment.")  *Accord Llort v. BMW of North America, LLC*, C20-0094, 2020 WL 2928472 at *10 (W.D. Tex. June 2, 2020); *Nyarko, et al. v. BMW of N. Am., LLC*, C18-3618, 2020 WL 1491361 at *9-10 (D. Md. Mar. 27, 2020); *O'Connor, et al. v. BMW of N. Am., LLC*, C18-3190, 2020 WL 1303285 at *3-4 (D. Colo. Mar. 19, 2020); *Grover, et al. v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 629-33 (N.D. Ohio. 2020); *Harris, et al. v. BMW of North America, LLC*, C19-0016, 2019 WL 4861379 at *5 (E.D. Tex. Oct. 2, 2019); *Schneider, et al. v. BMW of North America, LLC*, C18-12239, 2019 WL 4771567 at *7 (D. Mass. Sept. 27, 2019); *Carroll v. BMW of North America, LLC*, C19-0224, 2019 WL 4243153 at *8 (S.D. Ind. Sept. 6, 2019).  (*See also* Dkt. 26 at 1, n.1 (citing other cases).)

In addition, and as plaintiff observes, "[t]he Rule 9(b) standard is relaxed in fraudulent omission cases[,]" as a plaintiff "'will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010) (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007), and citing *Zwicker v. Gen. Motors Corp.*, No. C07–0291–JCC, 2007 WL 5309204 at *4 (W.D. Wash. July 26, 2007)).  In this case, plaintiff pleads that, within the first year of the vehicle purchase and during the warranty period, at a local BMW dealership, BMW misrepresented that the oil consumption of the N63 engine was normal and did not warrant repair.  (Dkt. 17, ¶¶18-19.)  Plaintiff, as such and as discussed further below, adequately pleads fraudulent concealment through omission.

        b.    <u>Equitable tolling</u>:

Plaintiff also alleges the timeliness of his claims due to equitable tolling based on BMW's

REPORT AND RECOMMENDATION
PAGE - 12

misrepresentations in the *Bang* class action settlement notice. Specifically, plaintiff asserts the statutes of limitations for his claims were tolled from the date the *Bang* class action was filed on September 18, 2015, *Bang*, 2016 WL 7042071 at *3 (D.N.J. Dec. 1, 2016), until August 10, 2018, the date plaintiff opted out of the certified class in order to file his individual claims (*see* Dkt. 17, ¶92). Plaintiff asserts this tolling, for a period of two years, ten months, and twenty-three days, provides, at a minimum, statutes of limitations for plaintiff's breach of warranty and CPA claims expiring on August 12, 2019, based on his purchase of the vehicle on September 20, 2012. (*See id*., ¶14.) Plaintiff further asserts the timely filing of his claims through the commencement of his individual action in New Jersey District Court on December 3, 2018, that court's orders tolling the statutes of limitations for his severed claims through January 27, 2020, and his January 20, 2020 filing in this Court. (*See* Dkt. 1 and Dkt. 17, ¶¶92-95 (citing *Sarwar*, No. 2:18-cv-16750 (Dkts. 42 & 45).)

Plaintiff's assertion of tolling during the *Bang* class action relies on Supreme Court precedent suspending statutes of limitations "within the federal court system in federal question class actions." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974) (suspending limitations period "as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.")); *see also Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54 (1983) (tolling under *American Pipe* applies to both intervenors and class members filing separate actions). While some states have applied such tolling to state law claims when a class action was filed in another jurisdiction, the Supreme Court precedent "does not mandate cross-jurisdictional tolling as a matter of state procedure." *Clemens*, 534 F.3d at 1025 (concluding Illinois class action did not toll limitations period for California state law fraud claim).

REPORT AND RECOMMENDATION
PAGE - 13

Both this Court and the Eastern District of Washington have declined to apply cross-jurisdictional tolling given the absence of Washington law adopting the practice. *Embree v. Ocwen Loan Servicing, LLC*, C17-0156-JLQ, 2017 WL 5632666 at *5-6 (E.D. Wash. Nov. 22, 2017) (Washington negligence claim not tolled by Illinois class action: "Since Washington has not adopted cross-jurisdictional tolling, it would be inappropriate for this court to do so in the first instance."); *Mix v. Ocwen Loan Servicing, LLC*, C17-0699-JLR, 2017 WL 5549795 at *5 (W.D. Wash. Nov. 17, 2017) ("Washington courts do not appear to have addressed whether cross-jurisdictional tolling applies under Washington law. . . . In the absence of a clear rule permitting such tolling, the court declines to 'introduce' the rule here.") (internal citations omitted; quoting *Coe v. Philips Oral Healthcare, Inc.*, C13-0518-MJP, 2014 WL 5162912 at *5 (W.D. Wash. Oct. 14, 2014) ("When a state legal system is unclear on cross-jurisdictional tolling Federal courts do not generally introduce a rule."; class action under Washington's CPA did not toll plaintiff's New York state law claim because "New York state law does not expressly permit cross-jurisdictional tolling")). Recently, the Ninth Circuit twice rejected the application of cross-jurisdictional tolling based on the *Bang* class action in cases raising California state law claims. *Smothers v. BMW of North America, LLC*, No. 19-55633, 813 Fed. Appx. 291, 294 (9th Cir. June 8, 2020); *Yi*, 2020 WL 749629 at *2. Here, as in those cases, plaintiff's class action tolling defense is not applicable to his Washington state law claims because Washington has not adopted cross-jurisdictional tolling.[3]

---

[3] While plaintiff argues it would be unjust and inequitable to allow BMW to advise him of the right to pursue his claims outside of the *Bang* class action settlement and now argue his claims are time-barred, he does not address how his choice to initially pursue his claims in New Jersey District Court, rather than this Court, may impact that argument. Nor does either party specifically address any tolling of plaintiff's claims through the *Sarwar* action separate and apart from the *Bang* class action. In *Sarwar*, plaintiff and others alleged violation of the MMWA and breach of warranty and fraud under New Jersey state law. *See Sarwar*, 2019 WL 4072664 (First Amended Complaint filed March 19, 2019), and 2019 WL 7499157 at

      c.  <u>Timeliness given allegedly fraudulently concealed defect</u>:

  Given the inapplicability of class action tolling, the Court must determine whether it can be said plaintiff has alleged a plausible set of facts that would entitle him to tolling of statutes of limitations due to the alleged fraudulent concealment alone. The operative pleading does not identify a date on which plaintiff became aware of the alleged fraudulently concealed defect. Citing to the proceedings in *Bang* and *Sarwar*, plaintiff does allege that, on May 11, 2018, the New Jersey District Court granted preliminary approval of a class action settlement, that class action settlement notices mailed to plaintiff and others informed class members of the right to exclude themselves from the settlement, and that plaintiff opted to exclude himself on August 10, 2018 and filed an individual action in New Jersey District Court. (Dkt. 17, ¶¶89-92.)

  A review of court filings in *Bang* reflects that settlement notices were mailed to individual class members at some point between May 11, 2018 and July 9, 2018, as well as the creation of a website providing the Settlement Class Notice, a claim form, the settlement agreement and other relevant documents, and a toll-free number. *Bang*, No. 2:15-CV-6945 (Dkt. 88 & Dkt. 111-1 at 19.)[4] The complaint therefore sets forth facts showing plaintiff was made aware of the alleged defect at least as of July 9, 2018. He initiated this lawsuit less than two years later, on January 20, 2020. Defendant, although maintaining plaintiff's claims accrued much earlier, does not identify facts alleged in the complaint or evidence establishing plaintiff was, in fact, made aware of the

---

*2. Plaintiff indicates the court in *Sarwar* issued orders tolling the statutes of limitations "for any claims asserted in that case" during the pendency of that action and ultimately through January 27, 2020. (Dkt. 17, ¶¶94-95.) Yet, plaintiff did not pursue any Washington state law claims in *Sarwar*, and MMWA claims "stand or fall" with warranty claims under state law, *Clemens*, 534 F.3d at 1022. The parties should, if warranted, take the opportunity in any responses to this Report and Recommendation to address whether plaintiff's pursuit of his claims in *Sarwar* would serve to toll any applicable statutes of limitations.

[4] Matters of public record properly subject to judicial notice include "documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citation omitted).

REPORT AND RECOMMENDATION
PAGE - 15

allegedly fraudulently concealed defect at some earlier point in time.[5] Considered as such, it cannot now be said it appears beyond doubt plaintiff could prove no set of facts establishing the timeliness of his claims. Defendant's motion to dismiss plaintiff's claims as time-barred should be denied.

      2.      <u>Stand Alone Fraudulent Concealment Claim</u>:

Defendant argues plaintiff's fraudulent concealment claim should be dismissed because this Court has ruled there is no viable stand-alone cause of action for fraudulent concealment in Washington. *J.C. v. Society of Jesus*, 457 F. Supp. 2d 1201, 1203 (W.D. Wash. 2006). Plaintiff responds that both Washington courts and this Court have recognized independent causes of action for fraudulent concealment. *See, e.g., Jackowski v. Borchelt*, 174 Wash. 2d 720, 738-39, 278 P.2d 1100 (2012); *Casimir v. Remington Arms Co.*, LLC., C-1107-JM, 2013 WL 179756 at *3-4 (W.D. Wash. Jan. 16, 2013) (considering fraudulent concealment tolling). Defendant does not respond to this assertion in the reply. The Court, as such, finds defendant fails to sufficiently support his contention plaintiff may not pursue a stand-alone fraudulent concealment claim. *See also Hoefs v. Sig Sauer, Inc.*, C20-5173-RBL, 2020 WL 3488155 at *4 (W.D. Wash. June 26, 2020) (finding fraudulent concealment claim satisfied Rule 9(b) and denying motion to dismiss as to that claim); *Carideo*, 706 F. Supp. 2d at 1128-29 (conducting choice of law analysis and concluding Washington state law applied to plaintiff's tort claim of fraudulent concealment). *Cf. Flynn v. United States*, C18-5084-RBL, 2018 WL 3156904 at *4 (W.D. Wash. June 28, 2018) ("Even were the fraudulent concealment claim not abandoned, the Amended Complaint does not allege

---

[5] Defendant does not, for example, identify facts or evidence showing plaintiff became aware of the defect as of the date of the class action filing or at some earlier point during those proceedings. As stated above, plaintiff asserts that, with class action tolling, his statutes of limitations expired "*at a minimum*" on August 12, 2019. (Dkt. 26 at 10 (emphasis added).)

sufficient facts for a stand-alone claim against the United States sufficient to overcome the heightened pleading standard of Fed. R. Civ. P. 9(b)."; describing conclusory allegation of fraudulent concealment, but the failure to allege a plausible theory of liability by articulating the "'who, what, when, where, and why' of conduct by the United States.")

Defendant further fails to establish the allegedly insufficient pleading of a fraudulent concealment claim. As stated above, an allegation of fraud requires that plaintiff state the circumstances constituting fraud with particularity, including the time, place, and content of false representations and identities of the parties to misrepresentations. Fed. R. Civ. P. 9(b); *Swartz*, 476 F.3d at 764. "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). The standard is relaxed for an allegation of fraudulent omission given the difficulty of specifying "the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" *Carideo*, 706 F. Supp. 2d at 1132 (quoted and sources omitted).

In this case, plaintiff alleges BMW knew of the unreasonably dangerous and otherwise damaging oil consumption defect in the N63 engine since at least 2008, omitted and concealed material facts about the defect prior to plaintiff's purchase of the vehicle, misrepresented that the issue was normal and that the engine did not warrant repair when plaintiff sought diagnosis and repair at a local BMW dealership within the first year of the vehicle's purchase, knew that plaintiff was relying on incomplete representations regarding the vehicle prior to the purchase and on misrepresentations regarding the defect when he sought repair, had a duty to disclose the truth of the defect, but instead actively concealed and misrepresented the defect, damaged plaintiff through

the misrepresentations, and acted maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of plaintiff's rights and well-being. (Dkt. 17, ¶¶17-21, 37-76, 139-54.) Plaintiff, in so doing, adequately pleads a stand-alone claim of fraud. *See, e.g.*, *Hoefs*, 2020 WL 3488155 at *4 (finding fraudulent concealment claim satisfied Rule 9(b) where plaintiff alleged what the defendant concealed and for how long); *S.L. Anderson & Sons, Inc.*, 2018 WL 5921096 at *7-8 (finding plaintiff sufficiently alleged the necessary "'who, what, when, where, and how'" of a California state law fraud claim where alleged defendants were aware of an engine defect "as early as 2009, prior to beginning to sell the Engines, . . . still made false or misleading public representations about their reliability and durability[,]" continued to actively misrepresent the nature of the defect and efficacy of warranty repairs, and withheld information from plaintiffs and class members). Defendant, accordingly, also fails to establish entitlement to dismissal of the fraudulent concealment claim.

## CONCLUSION

For the reasons stated above, the undersigned recommends defendant's request that the court take judicial notice (Dkt. 23) be GRANTED, and defendant's motion to dismiss (Dkt. 24) be DENIED. A proposed order accompanies this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within

**fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 18, 2020**.

DATED this 31st day of August, 2020.

Mary Alice Theiler
United States Magistrate Judge